FANNIE E. MOUNT

*v.*

THE PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY.

1. An assignee in bankruptcy, appointed pending a suit to foreclose a mortgage on lands of the bankrupt, will be bound by the decree and sale made in such suit, whether he is made a party to such suit or not.

2. If he desires to be made a party to such suit, he must ask to be substituted in the place of the bankrupt, and if he fails to do so, his failure will be considered as a waiver of any defence he may have had.

3. The title made under a decree condemning mortgaged premises to sale invests the purchaser with all the rights and equities inhering in either of the parties to the suit, whether complainant or defendant, at the time of the institution of the suit.

4. So long as a judicial sale stands, the sum for which the property was sold must, as between the parties, be taken as a conclusive test of its value.

On motion to strike out plea. Heard on notice under paragraph 215 of the rules.

*Mr. William H. Vredenburgh* and *Mr. William L. Dayton*, for motion.

*Mr. Flavel McGee, contra.*

VAN FLEET, V. C.

The complainant moves to strike out a plea filed by the defendants, on the ground that the matters stated in it constitute no bar to her right of action. In order to determine whether the plea is sufficient or not, it is necessary to know on what facts the complainant bases her right of action. They may be briefly stated as follows: On the 31st day of December, 1873, Andrew Mount and William S. Mount executed a mortgage on real estate situate in the county of Monmouth, to George D. H. Gillespie and John K. Meyers, to secure the payment of a bond, made on the same day, conditioned for the payment of $275,000, on demand. Gillespie and Meyers, the mortgagees, were directors of the Manhattan Company, and the bond and mortgage were made to them to secure a debt which a firm, of which Andrew and William S. Mount were members, owed to the Manhattan Company. The bond and mortgage were executed with the understanding that they were to be assigned to the Manhattan Company, and they were so assigned accordingly. The Manhattan Company, on the 2nd of January, 1874, after obtaining title to the bond and mortgage, wrote a letter to

Andrew Mount, acknowledging the receipt of the bond and mortgage, and also that three other bonds and mortgages had been delivered to them, and stating that the four were held as collateral security for a note made by Wilmerding & Mounts for $75,000, dated January 2nd, 1874, payable at six months, and promising that upon realizing the amount due on the note, together with all expenses, the balance should be returned to him or his order. The mortgage executed by the Mounts to Gillespie and Meyer contained a clause giving the mortgagees the right, in case default should be made in the payment of the money secured by it, to take possession of the mortgaged premises and sell them, at public auction, and to convey them, as the attorney in fact of the mortgagors, and out of the proceeds to retain their debt, together with the expenses of the sale, rendering the surplus to the mortgagors. The bill avers that the defendants took possession of the mortgaged premises on the 12th of December, 1879, and held them until the following February, when they sold them for $125,000, and that the sum thus realized, together with the profits with which they should be charged, greatly exceeds the sum due to the defendants at the time of the sale. This suit is brought to recover this excess.

The complainant traces her right to this excess in this wise: Andrew Mount was adjudged a bankrupt, under the federal bankrupt law, in April, 1876; an assignee in bankruptcy was subsequently appointed, to whom the estate of the bankrupt was duly assigned; he, in February, 1879, sold and conveyed the mortgaged premises, together with all his rights and equities therein, to William S. Mount, who, by a proper conveyance, executed in October, 1885, passed all his rights therein to the complainant. These are the facts on which the complainant's right of action rests.

The defendants meet the case made by the complainant by a plea, which avers that on the 28th of May, 1875, they filed their bill in this court against Andrew Mount, William S. Mount and others, for the foreclosure of their mortgage by a sale of the mortgaged premises; that Andrew and William S. Mount appeared and answered the bill; that the case was put

at issue by a replication, and regularly brought to hearing, and a decree pronounced in favor of the complainants, in that cause, on the 19th of August, 1876, condemning the mortgaged premises to sale for the payment of their debt, and directing that a *fieri facias* issue for that purpose; and that a *fieri facias* was issued on the 31st day of August, 1876, and delivered to the sheriff of Monmouth county, who, pursuant to its command, sold the mortgaged premises at public auction, on the 14th day of November, 1879, to the defendants, for $10,000, and subsequently, on the 12th of December, 1879, executed a deed to them in consummation of the sale. The plea further avers that such decree, sale and conveyance effectually and absolutely barred and foreclosed all the rights and equities of both Andrew and William S. Mount in the mortgaged premises, and also the rights and equities of all persons claiming through them, or either of them, by title acquired subsequent to the institution of the foreclosure suit.

This plea, it is contended, is faulty in two important particulars. First, because it does not show that the assignee in bankruptcy was made a party to the foreclosure suit, and not having been made a party, it is insisted that the rights with which he became invested, by force of the bankrupt law, were unaffected by the decree and sale made in that suit; and secondly, it is insisted that the defendants by their letter of January 2d, 1874, to Andrew Mount, became bound to exercise for his benefit the power of sale contained in the mortgage, and that they were not relieved from the performance of this duty by the foreclosure and sale of the mortgaged premises, inasmuch as they became the purchasers thereof at such sale; in other words, that they by their letter took on themselves a trust in favor of Andrew Mount to sell the mortgaged premises for his benefit, which was not destroyed or extinguished by the sale and conveyance under the decree of foreclosure, but was continued in full force by the fact that they acquired title to the mortgaged premises at such sale.

There is nothing in the first objection. The foreclosure suit had been pending nearly a year before Andrew Mount was adjudged a bankrupt. He had appeared to the suit and filed an

answer before the proceeding in bankruptcy was commenced. His.assignee took whatever right or interest he acquired in the mortgaged premises, under the bankrupt law, subject to that suit. The rule is now .established that where a mortgagor ·is adjudged a bankrupt during the pendency of a suit for the fore-closure and sale of his mortgaged premises, and an assignee is appointed, .the assignee stands, in respect to the mortgaged premises, in the same position as ·any other purchaser *pendente lite.* If the assignee desires · to become a party to the suit he must ask to be substituted in the. place of the bankrupt, and if he fails to do so, his non-intervention will raise an implication, either that he has no defence, or that he has elected to waive any defence he may have. If he fails to intervene, and a decree for sale is made, he will be concluded by it ; and a sale made in execution of the decree will bar his rights as effectually as it does those of the bankrupt. *Eyster* v. *Gaff, 91 U. S. 521.* The court, in the case just cited, say : " The bankrupt act expressly provides that the assignee may prosecute and defend all suits in which the bankrupt was a party at the time he was adjudged a bankrupt. If there .is any reason for interposing, the assignee may have himself substituted for the bankrupt, or he may be made a defendant on his own petition. If he chooses to let the suit proceed without defence, he stands as any other person would on whom the title had fallen since the suit was com-menced. It is a mistake to suppose that the bankrupt law avoids, of its own force, all judicial proceedings in the state, or other courts, the instant one of the parties is adjudged a bank-rupt. There is nothing in the act which sanctions such a prop-osition." The law, as thus declared, has been enforced by this court · in *Esterbrook Co.* v. *Ahern, 4 Stew. Eq. 3,* and by the court of errors and appeals in *Davis* v. *Sullivan, 6 Stew. Eq. 569,* and must be considered as authoritatively settled in this state.

The second objection also seems to me to be without sub-stance. The · letter upon which it is founded did not, in my judgment, change the contract relations existing between the parties, by force of the mortgage, in the slightest degree, except

that the mortgage purported to have been given to secure a debt of $275,000, while the letter admits that the debt which it secures is only $75,000. But in all other respects the terms of the mortgage and the letter appear to be substantially identical in their legal import. The mortgage conveyed the lands described in it as security for the payment of a debt. By the contract thus made the mortgagees acquired a right, if the mortgagors failed to pay the debt when it fell due, to enforce payment by a judicial sale of the mortgaged premises, and if more was realized by the sale than was sufficient to pay the debt, the surplus would belong to the mortgagors. Now that is just what the letter stipulates Andrew Mount shall be entitled to. It says that the four mortgages are held by the defendants as collateral security for the payment of a debt of $75,000, and that if they realize out of these securities more than is sufficient to satisfy their debt, they will render the surplus to Andrew Mount. The method to be adopted to realize upon the securities, or to enforce payment of their debt, is not defined or marked out. The mortgagees were left free to adopt any lawful method. They had an undoubted right to resort to a sale of the mortgaged premises by judicial process. That was a remedy which was inherent in their contract, and of which no power could deprive them. That is the method which the plea avers the defendants adopted. This method of realizing upon this particular security produced no surplus. The mortgage debt was over $80,000, and the mortgaged premises, it appears, were sold for $10,000. It is true, it also appears that the mortgaged premises were sold by the defendants, within three months after they obtained title, for $125,000. It may be that the disparity between the actual value of the mortgaged premises, and the sum for which they were sold at judicial sale, was so great, that the court, on application at the proper time, would have set the sale aside, but no relief of that kind is sought by the bill in this case. It raises no question either as to the fairness or validity of the sale; indeed, the fact that the defendants had acquired title to the mortgaged premises by judicial sale is not mentioned in the bill. It is obvious, therefore, that no relief can be given to the complainant

in this suit, on the ground that the mortgaged premises were sold to the defendants for a price so grossly inadequate as to render their purchase fraudulent. So long as a judicial sale stands, the sum for which the property was sold, must, as between the parties, be taken as a conclusive test of its value. *Snyder* v. *Blair, 6 Stew. Eq. 208.* If the matters stated in the plea are true, it would seem to be indisputable, that the defendants have not realized sufficient upon this particular security— and this is the only security which the bill shows anything has been realized upon—to satisfy their debt; there is, therefore, no surplus, and consequently nothing in the hands of the defendants for which they can be required to account.

The claim that the letter of January 2d, 1874, created a trust relation between the defendants and Andrew Mount, imposing upon the defendants the duty, if they purchased the mortgaged premises at judicial sale, to hold and dispose of them for his benefit, is, in my judgment, purely fanciful. There is nothing in the letter, as I read it, which gives the least support to this claim. The only duty which the defendants assumed by the letter was, in case they realized more from the security than was sufficient to pay their debt, to render the surplus to Andrew Mount. As already remarked, the defendants were at liberty to adopt any method or remedy, for realizing upon the securities, which the law furnished. The remedy which they adopted was a foreclosure of this particular mortgage by a judicial sale of the mortgaged premises. Their right to resort to this remedy was, in my judgment, beyond dispute, and I regard as equally certain that the title that they thus acquired to the mortgaged premises invests them, so long as it stands, with all the rights and equities which inhered in the parties, whether complainant or defendant, at the time of the institution of the suit.

The case upon which the complainant wholly relies to vindicate her claim that the defendants took title to the mortgaged premises, under the sale in foreclosure, for the benefit of Andrew Mount, or those standing in his right, is *Brown* v. *Tyler, 8 Gray 135.* It appeared in this case that the plaintiff's intestate had assigned a mortgage which she held on the lands of one Gard-

ner to the Bank of Roxbury, as collateral security for a debt which the defendant owed to the bank. The assignment was a pure matter of favor to the defendant. The bank subsequently proceeded, by a course of practice peculiar to Massachusetts, to foreclose the mortgage. This was effected by an entry on the mortgaged premises, pursuant to judicial authority, and holding possession for three years thereafter. The bank, two years after its title had become indefeasible as against the mortgagor by three years' possession, sold the mortgaged premises for enough to satisfy its debt. After the bank sold the mortgaged premises, the plaintiff brought an action against the defendant to recover the money which his intestate had paid, by force of the assignment and the subsequent proceedings, for the defendant's use, and the defendant set up the statute of limitations in bar of the action. The question which this condition of the pleadings presented was, When should it be considered the money was paid—when the title of the bank to the mortgaged premises became indefeasible as against the mortgagor, or at the later period, and when the bank actually realized its money on the sale of the mortgaged premises? Chief-Justice Shaw, who heard the case originally, held that payment should be considered to have been made on the expiration of three years after entry, when the title of the bank became indefeasible, and he consequently adjudged the action to be barred, but the supreme court, on a review of the case, adopted the other view. They held that the property, as well after foreclosure as before, was equally held in trust for the benefit of both pledgor and pledgee, and was to be disposed of for the benefit of all parties. They said : "On the one hand, the assignee who held the same as collateral security was not, in consequence of the foreclosure, required to take the land in payment, if he was ready and willing to proceed to reduce the same to cash by a fair and proper sale of the same; nor, on the other hand, would he be permitted to retain the same in his own right exclusively, regardless of what would be for the interest of the assignor." The judgment pronounced by the supreme court was due entirely to the effect which the law of Massachusetts attributes to a foreclosure which is effected by

Mount v. Manhattan Co.

entry and possession. Such a foreclosure does not operate as payment. Although the title of the mortgagee becomes indefeasible against the mortgagor after three years' possession, where his entry was by judicial authority, yet his debt is not thereby satisfied, at least only to the extent of the fair value of the mortgaged premises. He may still sue the mortgagor for the mortgage debt, and if on a valuation of the mortgaged premises, it appears, that at the time his title became indefeasible they were not worth a sum equal to the mortgage debt, judgment will be entered in his favor for the difference. *Newall* v. *Wright, 3 Mass. 138; Amory* v. *Fairbanks, Id. 562; West* v. *Chamberlin, 8 Pick. 336.* The distinction between the legal consequences resulting from the two methods of foreclosure is so obvious that it need not be pointed out. The one passes the title to the mortgaged premises at a price which must, so long as the sale stands, be taken as a conclusive test of their value, while the other simply vests the title to the mortgaged premises in the mortgagee without fixing or determining the sum or price which he shall pay for them.

The facts stated in the plea constitute, in my judgment, a complete bar to the complainant's action. The motion to strike out must therefore be denied, with costs.

The first plea having been adjudged to be sufficient, the additional pleas are useless, and should, for that reason, be struck from the record.